# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LAMAAR T. BRAZIER,

    Petitioner,

vs.

D. NEVENS, et al.,

    Respondents.

Case No. 2:07-CV-01177-KJD-(RJJ)

**ORDER**

        Before the Court are the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#1), Respondents' Answer (#20), and Petitioner's Response (#22). The Court concludes that Petitioner is not entitled to relief and denies the Petition (#1).

        "A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our

1  precedents, "so long as neither the reasoning nor the result of the state-court decision
2  contradicts them."

3  Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court
4  may not issue the writ simply because that court concludes in its independent judgment that the
5  relevant state-court decision applied clearly established federal law erroneously or incorrectly.
6  Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76
7  (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow.  Applications of the rule may be plainly correct or incorrect.  Other rules are more general, and their meaning must emerge in application over the course of time.  Applying a general standard to a specific case can demand a substantial element of judgment.  As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

13  Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

14  The petitioner bears the burden of proving by a preponderance of the evidence that he
15  is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

16  On September 11, 2000, Vaughan Cannon, then 81 years of age, was robbed of his
17  wallet while he was near the intersection of Imperial Avenue and Third Street in Las Vegas.  The
18  wallet contained $38 in currency, a blank check, Cannon's driver's license, and other cards.  Ex. 4,
19  pp. 44-54 (#21-2, pp. 13-16).[1]  On October 4, 2000, Darren Paul, at the time a patrol officer of the
20  Las Vegas Metropolitan Police Department, stopped a vehicle near the intersection of Lindell and
21  Oakey in Las Vegas.  Jonathan Delgado was the driver, and Petitioner was the passenger.  Officer
22  Paul determined that the car was stolen, and he arrested Delgado.  Ex. 5, pp. 34-36 (#21-3, p. 11).
23  In searching the car pursuant to the arrest, he found a wallet on the passenger-side floor, where
24  Petitioner had been sitting.  Id., pp. 36-37 (#21-3, pp. 11-12).  Officer Paul identified and
25  photographed Cannon's driver's license, other cards, and a driver's license belonging to a person
26  not related to this action.  Id., pp. 37-41 (#21-3, pp. 12-13).  No documents belonging to Petitioner

---

[1] Page numbers in parentheses refer to the documents in the Court's electronic docket.

were in the photograph. Id., p. 58 (#21-3, p. 17). Officer Paul could not contact the people on the driver's licenses. Not knowing about the robbery of Cannon, Officer Paul let Petitioner go. Id., p. 38 (#21-3, p. 12). Later that day, Officer Paul was able to contact Cannon, who informed him of the robbery. Cannon went to the police station, retrieved the wallet and cards, and made an appointment with Paul to conduct a photographic lineup the next day. Id., pp. 42-46 (#21-3, pp. 13-14). On October 5, Officer Paul went to Cannon's house for the lineup. Cannon identified Petitioner as the robber. Ex. 4, p. 57 (#21-2, p. 17); Ex. 5, p. 49 (#21-3, p. 15). Also, Cannon told Officer Paul that while the driver's license and most other cards in the wallet were his, the wallet itself and one card were not his. Ex. 4, p. 56 (#21-2, p. 16). That card was a Sierra Care Incorporated card, and Petitioner's name was on it. Ex. 5, p. 41 (#21-3, p. 15). Based on that information, Petitioner was arrested and charged with the robbery. Right before trial started, Cannon informed the prosecution that the blank check that he kept in the wallet had been cashed. It was made payable to Petitioner for $530. Cannon testified that someone had forged his signature on the check, probably by trying to copy his signature from the cards in his wallet. Ex. 4, pp. 64-65 (#21-2, pp. 18-19).

After the jury trial in the Eighth Judicial District Court of the State of Nevada, Petitioner was convicted of robbing a person aged 65 years or older. Ex. 10 (#21-4, p. 35). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 11 (#21-5, p. 1). Petitioner then commenced habeas corpus proceedings in the state district court, eventually filing an amended petition. Ex. 16 (#21-6, p. 8). The district court held an evidentiary hearing on the petition. Ex. 17 (#21-6, p. 20). The district court denied the petition. Ex. 19 (#21-8, p. 3). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 20 (#21-8, p. 16). Petitioner then commenced this action.

In Ground 1, Petitioner claims that his prior convictions should not have been admitted into evidence. These prior convictions were not admitted at sentencing because the trial judge stated that she would not sentence Petitioner as a habitual criminal. Ex. 8, p. 6 (#21-4, p. 19). The trial judge did rule that the convictions would be admissible at trial if Petitioner testified. Petitioner did not testify. "[T]o raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." Luce v. United States, 469 U.S. 38, 43 (1984)

(interpreting Rule 609(a) of the Federal Rules of Evidence); United States v. Johnson, 903 F.2d 1219, 1222 (9th Cir. 1990) (applying Luce to constitutional claim of right to testify). Ground 1 is without merit.

Ground 2 is a claim that the trial court improperly denied a continuance of the trial. Petitioner sought that continuance to investigate the handwriting and the circumstances surrounding the recently discovered check. At the habeas corpus evidentiary hearing, counsel testified that he wanted to learn where the check was cashed, whether the person who accepted the check examined a photographic ID, and whether the person who cashed the check was white or black, all with an eye to proving that Petitioner was not the person who cashed that check. Ex. 17, p. 10 (#21-6, p. 30).

A continuance would have been futile. The investigation that counsel wanted to conduct would have shown that Petitioner had cashed the check. At the state-court evidentiary hearing, Petitioner admitted that he cashed it. Ex. 17, p. 11 (#21-6, p. 31). Ground 2 is without merit.

Ground 3 is a claim that the trial court improperly denied the admission into evidence of the preliminary hearing transcript. At trial, Cannon identified Petitioner as the robber. He also testified that he initially identified the wrong person at the preliminary hearing; he had noted where Petitioner was sitting before the preliminary hearing started, but Petitioner was then moved and Cannon did not notice that, Cannon pointed to where he thought Petitioner was sitting, and then Cannon corrected himself. Ex. 4, pp. 61-63 (#21-2, p. 18). Petitioner cross-examined Cannon about this misidentification, but Petitioner did not impeach Cannon with his preliminary hearing testimony. Id., pp. 66-69 (#21-2, pp. 19-20). The next day, Petitioner sought to admit into evidence the preliminary hearing transcript. Petitioner wanted to show to the jury that Cannon did not correct his misidentification at the preliminary hearing, despite his trial testimony to that effect. The trial court denied the request to admit the preliminary hearing transcript, because Petitioner had the opportunity to impeach Cannon with his preliminary hearing testimony. Ex. 5, pp. 22-24 (#21-3, p. 8).

Testimony at the preliminary hearing regarding Cannon's identification is brief and does not show that Cannon corrected himself:

| | | |
|---|---|---|
| 1  Q. | Do you see one of those people in the courtroom today? |
| 2  A. | Yes, I do. |
| 3  Q. | Please point to that person. |
| 4  A. | The man in the blue suit there, the black man (pointing). |
| 5  Q. | All right. You're pointing over to your left? |
| 6  A. | Yes. |
| 7  Q. | All right. . . . |

Ex. 2, pp. 7-8 (#21-1, pp. 13-14) (direct examination). On cross-examination, counsel asked Cannon how sure he was that the person to whom he pointed was the robber, and Cannon stated that he was almost positive. Id., pp. 14-15 (#21-1, pp. 20-21).

The admission of a preliminary hearing transcript into trial evidence is a matter of state law, which does not implicate any constitutional right unless it renders the trial fundamentally unfair. Estelle v. McGuire, 502 U.S. 62, 67-68, 75 (1991). On this issue, the Nevada Supreme Court ruled:

> Brazier contends that the district court abused its discretion when it refused to allow a preliminary hearing transcript to be admitted into evidence. At trial, defense counsel questioned the victim, Vaughn [sic] Cannon, about his testimony at the preliminary hearing. Cannon testified that he had pointed out the wrong person as the perpetrator at the preliminary hearing, but that someone had corrected him, and he immediately corrected his mistake by pointing out Brazier. This interaction was not recorded on the preliminary hearing transcript. Defense counsel failed to impeach Cannon by having him read the transcript and point out the lack of evidence showing he corrected his mistaken identification. Instead, on the following day the defense moved to have the preliminary hearing transcript admitted into evidence. Defense counsel argued that he failed to impeach Cannon on the previous day because he had not wanted to make a frail, elderly gentleman read thirty pages of evidence. The district court denied Brazier's request. We agree with this determination.
>
> First, we note that trial courts have considerable discretion in determining the relevance and admissibility of evidence. An appellate court should not disturb the trial court's ruling absent a clear abuse of that discretion. Nevada law limits "admissibility of prior officially recorded testimony to a narrow set of circumstances." Under NRS 171.198(6), before such evidence is admitted "there must be a showing that (1) the defendant was represented by counsel; (2) defendant's counsel had an opportunity to cross-examine the witness; and (3) the witness is shown to be unavailable."
>
> Here, Brazier has failed to demonstrate the third statutory requirement for the admission of such evidence, namely, that the witness was unavailable. Cannon was present on December 30, 2002, when Brazier's counsel had every opportunity to

> cross-examine him as a witness. Furthermore, Cannon was still under subpoena on the day that the district court denied Brazier's motion to admit the preliminary [hearing] transcript. Despite this fact, Brazier made no attempt to show that he tried to gain Cannon's presence before the cessation of trial on the following day. In Grant v. State, this court determined that the State failed to meet its burden to show the unavailability of a witness because the State failed to make proper and diligent service of a witness and made no attempt to show that it had attempted to contact the witness either at home or via family and friends. This case is analogous. Because Brazier failed to show that he attempted to contact Cannon, and that Cannon was unavailable to testify prior to the end of trial, he failed to meet his burden to demonstrate unavailability. As such, we find that the district court appropriately denied his motion to admit the preliminary [hearing] transcript into evidence.

Ex. 11, pp. 6-9 (#21-5, pp. 6-9) (footnotes omitted). Petitioner had the opportunity to impeach Cannon with Cannon's prior testimony, but he did not take it, and the reasons behind that decision are better discussed in Ground 4(D), on ineffective assistance of counsel. Furthermore, other evidence identified Petitioner as the robber. The wallet found next to Petitioner contained a card with his name on it, along with cards that belonged to Cannon. Cannon identified Petitioner at a photographic lineup. Petitioner cashed a check belonging to Cannon that was in Cannon's wallet when it was stolen, and that check was made payable to Petitioner with a forged signature. Under these circumstances, the lack of admission of the preliminary hearing transcript did not make the trial fundamentally unfair. Ground 3 is without merit.

   Ground 4 contains several claims of ineffective assistance of his counsel, Craig Jorgenson. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

   Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of

interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In Ground 4(A) and 4(B), Petitioner claims that counsel should have investigated and called as a witness Tony Means. Petitioner states that he obtained from Means the check that he had

1 cashed, and that Means would have testified to that effect. On these issues, the Nevada Supreme
2 Court held:

> Brazier admitted during the postconviction hearing that he cashed a check belonging to the 81-year-old victim, but he maintains that he did not steal the check. Rather, he contends that the check was actually given to him by Means and that Means would have admitted this information had he been called by Jorgenson to testify.
>
> Jorgenson, however, testified at the hearing that Brazier did not even inform him of the existence of the check until the day of trial. Brazier has failed to explain how Jorgenson could have investigated the check when he did not learn of the check until the day of his trial. After learning of the check, Jorgenson asked the district court for a continuance, but it was denied. Brazier has failed to show that Jorgenson's conduct was unreasonable.
>
> Jorgenson also testified that he did not recall Brazier ever mentioning Means. Although Brazier's recollection conflicted with Jorgenson's testimony, the district court apparently found Jorgenson to be the more credible of the two men. Moreover, Brazier's interest in Means as a witness is premised on the unlikely idea that Means would incriminate himself by admitting to robbing the victim.
>
> We conclude that Brazier has failed to demonstrate that Jorgenson was ineffective on this matter, and the district court properly denied this claim.

Ex. 20, pp. 3-4 (#21-8, pp. 19-20) (footnotes omitted). Petitioner argues that he was under no obligation to make the check known to the prosecution. Response, pp. 3-4 (#22). That much is true, but it is no explanation why he did not make the check known to his own attorney. If Petitioner had told him about cashing a stolen check, then counsel could have investigated the circumstances surrounding that check, and counsel could have been prepared to defend against the check if the prosecution learned about it. As it happened, Jorgenson was the last person to learn about the stolen check. Furthermore, Jorgenson testified at the evidentiary hearing that based upon his experience, calling a witness like Means is pointless because he would just retain or be appointed an attorney and invoke his own privilege against self incrimination. Ex. 17, pp. 44-45 (#21-7, pp. 23-24). The Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d).

In Ground 4(C), Petitioner claims that counsel should have objected to the chain of custody of the wallet that was introduced into evidence. On this issue, the Nevada Supreme Court ruled:

> Third, Brazier contends that the district court improperly denied his claim that Jorgenson was ineffective for failing to object to the admission into evidence of a wallet that contained the victim's identification that was found in a stolen vehicle that Brazier was riding in when he was arrested. We disagree. Brazier complains that the wallet did not belong to the victim. However, testimony at trial showed that the wallet contained identification belonging to the victim. Brazier has failed to specify on what basis Jorgenson should have objected to the admission of the wallet and that his objection would have been successful. We conclude that Brazier has failed to demonstrate that Jorgenson was ineffective on this matter, and the district court properly denied this claim.

Ex 20, p. 6 (#21-8, p. 22) (footnote omitted). At the state-court evidentiary hearing Petitioner argued that something was wrong with the chain of custody of the wallet because the card with Petitioner's name did not appear in the Polaroid photograph of the wallet's contents, but then was found in the wallet after the wallet was released to Cannon. His theory was that Officer Paul photographed the contents of the wallet, examined Petitioner's documents including the Sierra Care card, forgot to give the Sierra Care card back to Petitioner, and instead put it into the wallet. Ex. 17, pp. 38-39 (#21-7, pp. 17-18). Jorgenson cross-examined Officer Paul about how he could have missed the Sierra Care card when he searched through the wallet. Ex. 5, pp. 57-60 (#21-3, p. 17). The judge noted that counsel argued to the jury about this discrepancy, but that the verdict showed that the jury did not accept the argument. Id., p. 40 (#21-7, p. 19).[2] Counsel could not have done anything more, and this part of Ground 4 is without merit.

Ground 4(D) is a claim that counsel should have impeached Cannon with his preliminary hearing testimony to show that he did not correct himself after identifying the wrong person. On this issue, the Nevada Supreme Court held:

> Second, Brazier contends that the district court improperly denied his claim that Jorgenson was ineffective for failing to impeach the victim's trial testimony. Specifically, Brazier maintains that at the preliminary hearing the victim identified a

---

[2] If Petitioner's story is true, then he is the victim of an extraordinary set of coincidences. Means gave Petitioner Cannon's blank check. The wallet with Cannon's stolen cards was in Delgado's stolen car, right next to where Petitioner was sitting. Officer Paul erroneously put Petitioner's Sierra Care card into the wallet with Cannon's cards. Cannon then discovered the Sierra Care card amongst his own cards and, independently of that Sierra Care card, identified Petitioner in a photographic lineup as the robber. Whatever doubt that this chain of unlikely events created is so unreasonable that it was easier for the jury to determine that Petitioner was the robber.

> different person as the robber and Jorgenson was ineffective for failing to impeach the victim at trial with the preliminary hearing transcript. We disagree.
>
> Our review of the preliminary hearing transcript does not indicate that the victim identified a different person as the robber. Thus, even if Jorgenson had a transcript of the hearing and moved to admit it during trial when he cross-examined the victim, Brazier has failed to demonstrate that the transcript itself had any impeachment value. Moreover, the victim testified during trial that he had initially identified a person other than Brazier as the robber during the preliminary hearing but he corrected himself. This information was therefore brought to the jury's attention. Even assuming the preliminary hearing transcript had impeachment value, Jorgenson testified during the postconviction hearing that due to the victim's old age and his identification of Brazier during trial, he made the decision not to heavily cross-examine the victim during trial on his misidentification of Brazier during the preliminary hearing. Jorgenson's decision was reasonable and is afforded deference on review.
>
> For these reasons, we conclude that Brazier has failed to demonstrate that Jorgenson was ineffective on this matter, and the district court properly denied this claim.

Ex. 20, pp. 5-6 (#21-8, pp. 21-22) (footnote omitted). This Court's review of the preliminary hearing transcript shows that Cannon did identify the wrong person: In the argument at the end of the hearing, the defense counsel, the prosecutor, and the judge all agreed that Cannon pointed to someone other than Petitioner as the robber. Ex. 2, pp. 25-27 (#21-1, pp. 31-33). The transcript also shows that Cannon did not correct himself at the preliminary hearing. However, the issue in Ground 4(D) is not about the effectiveness of counsel in demonstrating that Cannon identified the wrong person, because Cannon himself admitted that he identified the wrong person at the hearing. The issue in Ground 4(D) is whether counsel should have impeached Cannon with the preliminary hearing transcript to disprove Cannon's recollection that he corrected himself after the misidentification. The correction, or lack of correction, was at best a tangential issue. At a photographic lineup before the preliminary hearing, Cannon positively identified Petitioner as the robber. Officer Paul found a wallet containing Cannon's driver's license and other documents on the passenger-side floor of a car, where Petitioner had been sitting. Officer Paul later found a card belonging to Petitioner in the same wallet. Finally, Petitioner cashed a check that was drawn on Cannon's account and that Cannon kept in his wallet. Those facts are independent of Cannon's observation and recollection at the preliminary hearing, and the jury could infer from those facts that Petitioner was the robber. The Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d).

In Ground 4(E), Petitioner claims that counsel should have called Jonathan Delgado, who would have testified that Petitioner was with him on the day of the robbery and also would have testified who really owned the wallet that Officer Paul retrieved from the stolen car. On this issue, the Nevada Supreme Court held:

> Brazier also contends that Delgado was the driver of a stolen vehicle in which Brazier was a passenger on the day he was arrested. A wallet was found in the vehicle that contained a piece of identification belonging to the victim. Brazier maintains that he did not leave the wallet in the vehicle. Had Delgado testified, Brazier asserts, Delgado could have testified about who actually left the wallet in the vehicle.
>
> Jorgenson testified at the evidentiary hearing that he was aware of Delgado, but he did not believe that Delgado had any value as a witness and Brazier did not indicate to him otherwise. The decision of whom to call as a witness is a strategic decision that rests within the discretion of trial counsel, and Brazier has failed to specify exactly what information Delgado would have revealed that would have altered the outcome of his trial. Rather, Brazier only speculates that Delgado may have possessed information about who, besides Brazier, rode in the stolen vehicle Delgado was driving on the day Brazier was arrested. And even if Brazier wanted to call Delgado to testify, the record indicates that the State subpoenaed Delgado but was unable to locate him.
>
> We conclude that Brazier has also failed to demonstrate that Jorgenson was ineffective on this matter, and the district court properly denied this claim.

Ex. 20, pp. 4-5 (#21-8, pp. 20-21) (footnote omitted). At the evidentiary hearing, Jorgenson testified that he had no way of locating Delgado. Ex. 17, p. 44 (#21-7, p. 23). Also, as already noted, Jorgenson testified that his experience with witnesses like Delgado and Means is that they invoke their Fifth Amendment rights when they are called to testify. Id., pp. 44-45 (#21-7, pp. 23-24). Such was the likely outcome if Delgado was called to testify, because he would have had to admit that he was in possession of a stolen vehicle and stolen documents. The Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d).

In Ground 4(F), Petitioner claims that counsel failed to call any witnesses, failed to present any evidence, and advised Petitioner not to testify on his own behalf. On this issue, the Nevada Supreme Court held:

> Finally, Brazier contends that the district court improperly denied his claim that Jorgenson was ineffective for failing to communicate with him, file pretrial motions, and prepare an adequate defense strategy. We disagree.

> Brazier fails to explain how additional communications with Jorgenson would have altered the outcome of his trial. Brazier also fails to specify what pretrial motions Jorgenson should have filed and explain why those motions would have been granted, let alone how they would have altered the outcome of his trial. And Brazier further fails to articulate what defense strategy Jorgenson would have pursued and how it would have been successful. We conclude that Brazier has failed to demonstrate that Jorgenson was ineffective on these matters, and the district court properly denied these claims.

Ex. 20, pp. 7-8 (#21-8, p. 23-24) (footnote omitted). Petitioner needed to allege what counsel should have done, particularly in light of the evidence against him. The Nevada Supreme Court reasonably applied <u>Strickland</u>. 28 U.S.C. § 2254(d).

IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus (#1) is **DENIED**. The Clerk of the Court shall enter judgment accordingly.

DATED: October 23, 2009

_____
KENT J. DAWSON
United States District Judge